Case No. 22-1318 United States of America v. James Little, appellant. Mr. Carpenter for the appellant, Mr. Pierce for the appellant. Good morning, Mr. Carpenter. Good morning, Your Honor. May it please the Court, Josh Carpenter on behalf of James Little. Your Honor, you have reserved three minutes for rebuttal. Your Honor, the sentence imposed in this case for a petty offense consisting of a term of imprisonment followed by a separate term of probation is historically unprecedented. The government has not identified any court that has imposed such a sentence before the January 6th prosecution. The district court opinions in this case and others that have justified this novel outcome are flawed for three primary reasons. The first is that they rely on a mistaken belief that the defendant's interpretation of the statute would create surpluses. The government has conceded on appeal that that rationale is mistaken. Second, the opinions below do not grapple with the contextual problems that the government's interpretation created, including the effective repeal of the 1987 amendment that prohibits supervised release for petty offenders. And third, these opinions step into a policy or legislative role by purporting to fill what they perceive as a gap in the statutory scheme. But to the extent that such a gap exists, it is Congress's role, and not the court's, to fill that gap. And I'll start with the surpluses. Judge Lamberth, in the opinion below, recognized that there were two ways to read the text of this publication, one corresponding to a last antecedent interpretation and the other to a series qualified. In choosing between those two interpretations, Judge Lamberth relied heavily on the idea that the last antecedent interpretation would create surpluses by rendering the phrase, that is not a petty offense, meaningless and inoperative. That was an argument that the government made below. Judge Lamberth adopted it. But now, on appeal, the government recognizes that that was an error. Under either of these interpretations, the phrase, that is not a petty offense, does play a role. It changes the possible sentencing outcomes in cases that involve multiple petty offenses. So you concede that under your ruling, reading of the statute, a judge could impose a split sentence for conviction of multiple petty offenses? Yes, with one clarification to that. What can happen in a case that has, say, two petty offenses, for example? On one of the petty offenses, the court can impose imprisonment. On the other offense, the court can impose probation. So it is not a split sentence in the sense that one of those counts in a multiple offense case can receive both imprisonment and probation. The split sentence or dual sentence or whatever you want to call it comes about because there are two offenses of conviction. And under A3, under either interpretation, it is permissible to impose imprisonment on one and probation on the other. You don't have anything in the legislative history that supports that reading of the statute, do you? Yes, Your Honor. So when the 1994 amendment was passed, there is nothing, as far as I know, either way in the legislative history that tells us what Congress is doing other than the words that it used. However, you do have the 1991 proposed legislation, which purported to do exactly this, to allow imprisonment on one and probation on the other. Now, the government sort of makes a big deal of this idea that, well, that can't be the interpretation because it would make no sense for Congress to want to treat multiple petty offenses differently than a single petty offense. I would say, as an issue matter, I think there's all kinds of reasons Congress might want to do that. But more on point, the 1991 legislation shows us that at least the sponsors of that legislation thought it was a good idea as a matter of policy to treat single and multiple petty offenders differently. So I think that does support the idea that this language that was added a few years later in 1994 does support our reading. But nothing in the legislative history from 94 harkened back to 91, right? Correct. To my knowledge, the legislative history in 1994 is silent both ways. There is simply nothing other than the text that Congress passed to tell us. So we do not know if the change that happened from 1991, the proposed legislation to the 1994 enacted legislation, was intended to be a substantive change or whether it was simply somebody in the committee drafting process saying, look, this is a 30-word sentence, 39-word sentence. I think we can accomplish the same thing by tacking on this six-word modifier at the end of A3 and look, I've saved 30 words. My law professor is going to be very happy that I've cut out all of these words. Not realizing that cutting it from 39 words down to six words created ambiguity about the meaning. Senator Carpenter, one of the first things that you said is that this type of sentence is unprecedented and that it has not been opposed before January 6th, but the events of January 6th were themselves unprecedented, right? Sorry, I couldn't quite hear that last part. The events of January 6th were themselves unprecedented, right? That is certainly true, Your Honor, but I think that does not justify the courts in bending the rule of law. I think the rule of law, the statutes that are on the books exist and are to be followed, and if Congress determines in light of this unprecedented event that the sentences provided for in the current statutory scheme are inadequate, it is incumbent upon Congress to make that vote. I understand. The district court opinion, if I'm remembering it right, there are several, but I think it focused quite a bit on whether the same, whether same is an adjective or not. And your brief focuses on the dueling canons question much more than it does on trying to argue that the same is a noun, same as a noun. I just, I guess I'm wondering kind of what your thinking was in emphasizing canons over emphasizing same is arguably noun. Sure, so I think there are two things I would say there. The first is sort of the overarching point that I do not think the choice between the two interpretations here can be determined by looking at the text alone. And I point to the Confederated Tribes case from the Supreme Court recently, which said the best, the most grammatical reading of a statute in isolation is not necessarily the correct reading in the broader context. That's why, in our view, the choice between these two interpretations ultimately comes down not to canons or to grammar, but to the broader statutory. Let me be a little more precise. Do you think same is an adjective or do you think it's a noun? No, thank you. And that was the second point that I was to make was I think that it is an adjective. And I disagree. The whole parts of speech analysis in Judge Lambert's opinion, I think, is beside the point. I think it's a red herring. I think what it overlooks is the same thing that the government's integrated phrase argument in its briefing on appeal overlooks, which is that what we have here is an elliptical construction where everyone who reads this, I think most reasonable readers who look at this, understand the word offense is modifying, is present, it's just omitted. It's present as a matter of grammar. So let me then ask one kind of, I guess, I don't know, practical question. I'm going to ask the government the same thing, but what's the difference between probation and supervised release? If any, there is any difference in a general sense. Practically speaking, there's not. And the thing I would point to, I would highlight it because I don't think this passage was highlighted in the briefs. We both cited Senate Report 98-25 on page 89, which has some similar language. But at page 125 of that same Senate report, the report says the term of supervised release, which was created by this legislation that hadn't existed before, is very similar to a term of probation, except that it follows a term of imprisonment. That is the one and only difference between probation and supervised release. One is supposed to be, probation is supposed to be in lieu of supervised release. It's supposed to be a supplement to or in addition to following. That is the only practical difference. You see that we cited in the reply brief some of the pieces of the statutory scheme to support that, where probation officers, for example, are given identical duties of oversight with respect to probationers and supervised releasees. So as a practical matter, they are identical. And that is why the government's interpretation of A3 effectively nullifies the 1987 amendment to 35A3B3, which has the prohibition on imprisonment plus supervised release for petty offenders. It would simply make no sense for Congress to have said in one provision, for a petty offender, you cannot give prison plus up to one year of community supervision. But to say in a different provision, but for a petty offender, you can give imprisonment plus up to five years of community supervision. The reading of those two separate statutory provisions simply does not match under the government's interpretation. How would it work if your client were to violate the conditions of probation and the government were to propose that his probation be revoked? What if any additional imprisonment would he face? Well, that depends upon whose interpretation the statute controls. So in our view, he should have gotten probation first. But let's assume he was just sentenced to probation and then he violated. Our view is that upon revocation, a defendant in that circumstance could receive imprisonment full stop, not imprisonment plus additional probation. Under the government's interpretation, if you look at, I believe it's 3565A2, which is the revocation provision, it says that a defendant whose probation is revoked is resentenced under subchapter A. That means in our understanding of the statute that all of the penalties authorized by subchapter A are available anew. So in our view, under the government's reading, if we violate, he could get two more months in imprisonment plus three more months of probation, and that cycle would continue in perpetuity. But that's not the way that it works even under supervised release, right? You can't serve a supervised release term beyond whatever the maximum is that is provided by statute, right? That's absolutely right, and it's precisely because Congress addressed this scenario in the supervised release provision. If you look at 3583H, it contains a specific provision that says when there's a revocation, the amount of additional available supervision must be subtracted or must be reduced by the amount of time that the person has served in prison. In other words, Congress in the supervised release provision didn't rely on the general statutory maximum in 3583B, which says that for a Class A felony, it's a max of five years. That's the corresponding provision in the probation section. Each of them have that statutory max provision. In supervised release, Congress did not rely on that maximum. It included a specific provision, subsection H, that provides this limitation that prevents a never-ending cycle of re-imprisonment and revocation. The fact that Congress did not include a similar safeguard in the probation revocation provision, we think, is strong evidence that Congress did not intend for probation to work the way that the government would have it work in this case. I think Judge Rogers may have a question. Okay, you've covered it. Okay, so when looking at the text, if your reading of the text is correct, then you still have all of these same problems that you identified. You don't, and I'm so glad you asked that question, because I don't think in re-reading them that our briefs were clear on that point. So this never-ending cycle, under our interpretation, is not possible in a multiple-offense case. Because if we go back to how that works, so let's assume two offenses. The court imposes imprisonment on the first, probation on the second. The defendant serves the term of imprisonment, is released, and begins serving the sentence of probation. That defendant has completed the entirety of his sentence on count number one. He can be revoked on count number two. But at that point, the available sentences, under our interpretation, are either a continuation of probation under 3565A1, or revocation and imprisonment under A2. But under our interpretation, revocation, the only thing available is imprisonment, full stop. Not imprisonment, plus yet another term of probation. Because, again, in a multiple-offense case, the split sentence arises not because any one of those counts can receive both forms of punishment. It is because you have two separate offenses, and each one of them can have a different type of punishment. So imprisonment on one, probation on the other. But the cycle ends after one revocation in a two-offense case. If there are other questions at the moment, I'm happy to answer them. Otherwise, I'll yield until rebuttal. Any other questions, Judge Rogers? No, thank you. All right, we'll give you some time on rebuttal. We'll hear from the government. May it please the Court, James Pierce for the United States. The district court lawfully imposed a sentence that included a term of imprisonment, followed by a term of probation. When Congress appended the words, quote, that is not a petty offense, unquote, we call the petty offense clause, at the end of Section 3561A3, it empowered sentencing courts to impose the type of sentence that the district court imposed here. Even if that sentence were erroneous, however, any error would be harmless, because the district court could have imposed essentially the same sentence under Section 3563. How would it be essentially the same sentence if you say that it would be maybe weekends in jail up to, I guess, whatever, it's 60 days? Some sort of intermittent confinement? Intermittent confinement, I think, refers to the weekends and nights. What 3563 says is weekends, nights, or other intervals of time. Other intervals of time is not defined in the statute. We think that the best reading of that is probably up to about 14 days. So it is true that it would not be the 60 days continuously that the district court here imposed, but certainly that would readily encompass the 60 days. 3563 allows for actually all the way up to two years' worth of imprisonment during the first year of probation, which, if you do the math, would actually suggest that an interval of time, theoretically, certainly at some tension with the legislative history. But the point for this case is that certainly that would encompass the 60 days that the district court here imposed. Now, I'd like to go back. But what do you do with the fact that if under that construction, the sentence still would have been illegal in the sense that you're not contending that 60 days constitutes an interval of time within the meaning of that provision? So, you know, candidly, I think that's a tougher position. Obviously, we want to prevail on our top line position that, of course, this was fully statutorily permitted under 3561A3. I'm not going to fight too hard if the court concludes that wasn't a legal sentence. Well, I mean, I'm trying to understand because ordinarily then we don't reach, you know, the merits of an argument if there is a meritorious harmless error. That's why I'm starting to see, you know, is this a meritorious harmless error argument or not? I think it would depend on interpreting intervals of time. And as I said, though, there is no governing interpretation, either statutorily or under the case law. The court would have to read that that would permit a sentence up to 60 days. There is language in 3563 itself that would seem to suggest that, as I said, the fact that a full year's worth of probation could be imposed not here, of course, of imprisonment rather, not here because there's a statutory maximum, a petty offense of six months. So it is not obviously incorrect, though I do think there is some countervailing position in the legislative history. If this court were to disagree with our top line position and disagree that it was harmless, we would nonetheless ask for a remand where Judge Lamberth could then evaluate whether to either impose some sort of sentence under 3563 or impose a longer term of justice. With that, I'd like to return to the textual argument. I'm sorry. Yes. Let me ask you the question that I asked opposing counsel. He said there's basically no difference between probation and supervised release. Is that right? I think that's basically right. The probation office is about the same amount. They both allow for basically the same restrictions. Yes. I mean, of course, in any individual case, there'll be different conditions. But and I think there are some conditions that may not apply to one or the other. But I think functionally that's an area of common ground. Let me ask one other kind of actual background type question. The maximum amount of imprisonment for class A misdemeanor, class B and class C is I read 3559. Class A up to a year, class B six months, class C up to 30 days. Maybe you don't have it memorized off the top of your head. Does that sound right? I believe that's right. And there's an infraction that's up to five days. That says even underneath the class C. But that's good. I think that's that's that's correct. So turning to the textual argument here. The district court correctly concluded that the petty offense laws governs the whole phrase, the same or a different offense. In so doing, the court concluded that the same was an adjective. I think I heard my friend on the other side agree with that rule, that determination here today. And that's not that's a matter, I think, of just common sense. The same or a different offense was legislated initially when Congress passed the Sentencing Reform Act in 1984. It didn't change it in 1991 when they considered but ultimately declined to adopt a reading that I think the parties agree with unequivocally. I've supported the defendant's reading here, but instead added that is not a petty offense to the very end of 3561A3. Didn't set it off with a comma. Didn't use the word offense after the same. And even applying the last antecedents canon, if one gets beyond grammar and wants to get into a question of cannons, it's not clear that that actually accomplishes what the defendant is hoping that it does still. So I was there, but the the canon would reach certainly offense. But that still leaves the broader question. Well, what offense are we talking about? And the offense is the same or a different offense. It encompasses the entire phrase there. To read it the way the defendant would have the court read it. You have a different offense that is not a petty offense, and then you just have the word the same sitting out there. And yes, I suppose one could just write the word the same in. But another area of common ground, and I think this was the third point that my friend on the other side made instead of standing up, is it's not the bench's role, of course, to write in words that Congress has opted not to include. Congress could well have written the offense right after same. I think that would have made it a much closer argument and potentially one that we would lose. But this court is interpreting the text that we actually have. And that is, in fact, one that would have the petty offense clause cover the full phrase. I'd like to address the surplusage question. I know there weren't any questions on surplusage issue, but that was also one that my friend on the other side raised. That's a bit of a straw man here. Below what the defendant argued was asking Judge Lamberth to adopt the reading, the then-reasoning of Judge Pollard Petelli in a case called Spencer. And in Spencer, the court had said, under no circumstances could a court, sentencing court, impose a sentence that included both imprisonment and probation. And Judge Lamberth below, in dealing with that question, said, well, that would render the phrase, that is not a petty offense, meaningless. Clearly, it had some meaning. Congress added it, specifically added it in 1994. It had to have some function. And so Judge Lamberth said, at a minimum, it allows for the imposition of, he doesn't say a minimum, but that it allows for the imposition of both probation and imprisonment on a single petty offense. Mr. Peters, it's not our job to try to read the mind of Congress, of course, but it is our job to try to look at the text in the broader context and see how different parts of a statutory scheme fit together. So I want you to have a chance to respond to what I think is one of the strongest contextual or structural arguments of Mr. Little. And that is, why would Congress have wanted a one-year term supervised release for a Class A misdemeanor, but a five-year term probation for a petty offense? And as part of your answer, I'd hope you would factor in your answer to my first question, which is, there's basically no difference between probation and supervised release. So I agree it is somewhat a peculiar way to solve the question of post-imprisonment supervision for petty offense defendants. And again, I'm not walking back. I don't think there's really a functional difference in petty offense, excuse me, between supervised release. But my question is not, why would Congress have done probation for a petty offense and supervised release for a Class A misdemeanor? Fine. If they're about the same, it doesn't matter if one has one labor. My question is, why one year for Class A, five years for petty? So there is nothing in the legislative history to help answer that question one way or the other. I think the best answer or sort of a fair inference is that when Congress removed supervised release in 1987, it also made clear that the guidelines didn't cover petty offenses. This is in 3553B, and then the guidelines had a similar. Why is this a different scenario than, let's say, max penalty for first-degree murder? Sorry, I said it wrong. Max penalty for first-degree murder, 20 years. Max penalty for second-degree murder, life. That would be very odd to write a sentencing scheme that way. 20 years for first-degree murder, life for second-degree murder. Here, one year for Class A misdemeanor, five years for petty offense. Seems just as odd, right? Well, to be clear, and this gets back to your honors earlier as a question or clarification, certainly this doesn't change the actual statutory term of imprisonment, which Congress and the courts in particular have said, this is really what drives questions like eligibility for jury trial or something like that. Now, again, I don't actually have an answer. It is somewhat odd that Congress would do this, but Congress is fully empowered to do this, and for better or worse, it need not explain itself as to why it does that. But I think the other broader point here is one that Judge Wilkins' questions illustrate, which is that these same sorts of questions about the oddity or the anomaly of this arise just as readily in cases with more than one petty offense. And actually, I think that's a misreading. I think it could be a petty offense and any other offense, not even a petty offense, where you've got imprisonment on the petty offense and then probation on either the petty offense or potentially the non-petty offense. Maybe the answer to my question about the oddity, maybe not, is you think of the prison term plus, I'm just going to call it probation, but it could be supervised. You think of that as like, how severe is it in combination? And maybe for every day in prison, it has a severity level of, let's say, one. And for every day of probation, it has a severity level of, let's say, one one-thousandth. And so if you combine prison plus the year of probation, supervised release for Class A, it comes out to a severity level of, I don't know what the math is, but let's say 400, 365 days. And if you do that for a petty offense, it comes out to a severity level of 200 because prison time is so much less that even five years of probation doesn't get you up to a severity level of 200. Is that possible? What do you think? I mean, that's plausible. Again, candidly, there isn't anything in the legislative history to kind of bear that out. I would add, though, that even with a Class A misdemeanor, for example, Congress could, in fact, impose a sentence that is similar to and certainly more severe as far as prison time is concerned. But back to the question, the discussion of 3563, a court could impose a full probation of the same number of years and an amount in prison that potentially got up to a year. It's unclear, but certainly more than 60 days and more than six months, albeit likely in intervals kind of spaced out over the course of a year. So before the 1994 amendment, the way that the statute read is that it ended with the word, well, after, for the same or a different offense. And then there was a period, right? Correct. And so in your mind, then the interpretation of 3561A3 at that time was what? What work did that particular provision do? That provision precluded any imposition of a term when someone is sentenced at the same time for one offense or multiple offenses for a sentence that included both imprisonment and probation, with the caveat, unless the imprisonment was a condition of probation under 3563, I think it was B11 at the time. So just to clarify, do you believe that prior to 1994, you could not impose a sentence of probation if there was also a sentence of imprisonment for any count that was being sentenced at that same time, except for the circumstance where imprisonment could be made a condition of probation? Is that what you're saying? That's right. That's what I believe 3561A3 before 1994 did. After 1994, it allowed, it certainly allowed for a split sentence. Of course, the dispute here, and this is an argument that the defendant raised for the first time on appeal was, well, it's only available in multiple petty offense cases. We think that the district court read it correctly. But you're not arguing forfeiture? You're not arguing that they forfeited that argument? No, we haven't raised a forfeiture claim, a plain error claim. So let me just drill down here. The way I read 3561A3 prior to 1994 was that if you sentence someone to a term of imprisonment, let's say there were three counts of any sort, they could be felonies, misdemeanors, petty offenses, didn't matter. If you sentence someone to a term of, if you sentence them to a term of imprisonment on any one of those counts, you could not sentence them to a term of probation on any of the other counts or do any sort of split sentence, right? That's right. Again, the caveat that you could make, you could start with probation and do imprisonment. If there's going to be a sentence of imprisonment, then probation is off the table for that count or any other count, right? Correct. And supervised release would sort of play the role of post-imprisonment supervision. But if you decided that you were going to sentence to probation on one or more of those counts, you couldn't do imprisonment unless it were a valid and legal condition of probation. That's right, under 3563. That's prior to 1994. So when Congress adds the phrase, that is not a petty offense at the end, that's the phrase that we want to see what work does it do, right? That's really the operative thing that we should be laser focused on as opposed to necessarily fighting for the same or a different offense. And it makes sense to really look and see exactly what that is not a petty offense, what work that is doing first and foremost. I think that's right. And I think there's agreement that that carves out petty offense pieces. The question is, what does a petty offense piece mean? Is it a single one? Could it be a single one? Or does it require it be one of multiple offenses? So I guess what I'm saying is, is that. Why wouldn't Congress why isn't the best interpretation of this is that Congress would want a three to basically work the same way as it did before. But. To the extent that one of the offenses is not a petty offense, then. Then. I guess. I guess what I'm saying is, why isn't this intended to just exclude any petty offenses from from the prior treatment? We think that's exactly what it does. That's that's your argument. That is that is precisely our argument. And what I understand the defendants to say is, no, no, it has to be multiple. No legislative history to back that up. I think there's sound reason to understand why that would be the case. But it is our argument. And Judge Lambert below. This is sort of the surplus point made the same point. That is not a petty offense has to do some work. And in our view, it carves out any offense conviction. But a single one or potentially an instance where is one among a number of. What about this whole problem of. Of, you know, the never ending cycle of potentially of revocation and imprisonment, re-imprisonment and re-imposition of probation ad nauseum infinitum. So a few comments about that. And certainly, as the recent point out, this notion of a split sentence existed for some 25 years from the late 60s until the sentencing reform act. And that kind of never ending revocation and re-imprisonment hypothetical was was never borne out. Second to the never borne out because something in in in the statutory scheme precluded it. So just as a practical matter, judges didn't do that. So I think potentially both. It's hard to sort of answer a historical counterfactual. There was at the time something in the probation statute that did limit in the way that a similar safeguard exists in the supervised release statute. Now, admittedly, that doesn't still exist in the probation statute. But to the extent that's that's an issue, I mean, that's an independent concern, I think, with the probation statute. It's hard to see how that has a relevance for interpreting the plain text of thirty five, sixty one, eighty three. Again, the question there is what does that is not a petty offense. But drilling down into a potential flaw in the probation, you know, in revocation of probation is hardly something that moves the needle on the textual question that thirty five, sixty one, eighty three. So I guess your argument is that, you know, perhaps Congress didn't realize that they were creating that issue when they added that is not a petty offense. But. But that doesn't mean that. I guess we shouldn't enforce Congress's intent here with this statute. That's right. It should have no bearing on the statutory question. I'm sure one looks hard enough when confined anomalies and, you know, in various respects. And so we don't think that that should have bearing on the district court, including a textual question that, in our view, is soundly decided by the text itself. I know. I think. Your friend on the other side admitted that it hadn't really spelled out in their their briefing. It's argument about. Imprisonment on one count in probation on second count being the way that split sentence would be done. I guess I'm just trying to make sure I have your best response to that. Again, I'm assuming you are arguing. I haven't heard you argue any sort of forfeiture here at the podium. So what is your best response to that is. The best reading of the statute. So we don't disagree that a court could impose a sentence under the circumstance where a defendant is convicted of two petty offenses. Or, as I said, I think in a colloquy with Judge Walker, a petty offense and even a non petty offense. But there is nothing to suggest that Congress intended that to be the sole area in which that is not a petty offense. The petty offense clause does work. There is no sensible reason why that would Congress would have done that. I think the best sort of understanding is, as Judge Freeman laid out Applinger, Congress realized the gap created when supervised release was taken off the table and filled that gap by allowing for petty probation in a petty offense case. So there's not dispute among the parties that it's available where there are multiple petty offenses. But. Nearly all of the problems and the sort of oddities that my friend on the other side flags, including the oddity of sort of the mismatch, a petty offense case, having a more seemingly more draconian penalty would exist just as readily in their interpretation as it would in ours. And it's hard to see why Congress in an instance would, in a two petty offense case, would somehow think, oh, a split sentence is fine there, but not in a single petty offense case. Now, if I could just make one final point. Because it seems like before 1994, Congress was speaking to, we don't want split sentences where there is a single offense. And that's why they say for the same or different offense. Right. Before 1994, they were saying we don't want probation and imprisonment for the same offense, which is kind of like a split sentence on one count as we have here. And we don't want probation and imprisonment. If you got multiple counts, we don't care what kind of offense it is. We just don't want probation and imprisonment. But then when they add that is not a petty offense, they're saying, OK, well, the exception is if one or more of the offenses is a petty offense. That's you. That's your interpretation. One or more. The same has to mean something. So the same petty offense or a different offense. Right. And so I think it's the same general rule remains in place. What the petty offense does is just carve out an exception for either single petty offenses we have here or for petty offense and some other offense. Judge Rogers, you have any questions? No. Thank you so much, Judge Wilkins. All right. Here. Thank you, Mr. Pierce. Mr. Carpenter will give you two minutes. Thank you, Your Honor. Judge Wilkins, I'll start with the question we just talked about, which I think is what does this 1994 amendment, what work does it do? And I think to analyze that, it's helpful to step back and look at the progression of the statutory history with respect to petty offenses. So up until 1984, the statutory scheme says no split sentence for any petty offense. The split sentence provision that existed at the time carved out petty offenses. So up until 1984, no matter if it was one petty offense or multiple, you could not have both imprisonment and a period of probation or supervision. 1984 amended that, allowed for one year of post-imprisonment supervision for petty offenses. That was on the books for three years, at which point Congress repealed it and went back for petty offenses to the rule that had been in place before 1984. So that beginning in 1987, as before 1984, no matter if it's one offense or multiple offenses, you cannot have imprisonment plus probation for a petty offense. The question then is, when they amended in 1994, how big, we agree they're creating an exception, and now there is at least some circumstance where this is missing. Our view is that it makes sense to interpret it narrowly, because if you interpret it broadly, you are effectively repealing the 1987 amendment, which puts in the other than a petty offense exclusion in B3. If Congress intended to do that, they would have done that. They didn't do that. So we have to give, in our view, that language a different meaning than it was given before. I don't want to take the last 20 seconds of your rebuttal, but then I have a question. Sorry, say that again? I don't want to take the last 20 seconds of your rebuttal, but then I have a question when you're done. Sure. So the other point I would make on rebuttal is, with respect to the remedy in this case, we believe the correct remedy is a remand with instructions to strike the probationary term. The government now, for the first time, in an oral argument, has made a request to remand for resentencing. Our argument would be twofold on that. First, that they did not make that request for resentencing, and their briefing is the appropriate alternative remedy. So we think that is waived or forfeited under this court's case law. And the reason that doesn't make any sense anyway is that double jeopardy principles prohibit it. I would point the court to the ex parte Lange decision from the Supreme Court in 1873, which, if you interpret the statute like we do, it's on all fours. In that case, the sentence was, the statute said, a fine or imprisonment. The district court imposed a fine and imprisonment. After the defendant paid the fine, the district court realized its error and sought to resentence. And the Supreme Court said, because the defendant has already suffered one of the alternative punishments, it is beyond the power of the court to resentence. So we don't think, even if the government had made a timely request for resentencing as a remedy, that it would be appropriate under double jeopardy principles. Judge Walker, do you have a question? Well, you mentioned implied repeal a moment ago, and you also hit this point pretty hard in your brief as well. But it's not an implied repeal if it's an expressed repeal. And the government's point is that this is an express change to the pre-'94 regime. Sure. So I think the distinction, and maybe we're understanding express and implied differently, I think it's not an express repeal because the words, other than a petty offense, remain in 3583b3 to this day. Congress has never passed a piece of legislation striking those words. So maybe it's not an implied repeal, but what it certainly is, is it's a creation of surpluses. It's rendering those words inoperative. They have no practical effect. It's rendering words that were in a prior statute inoperative, not the words that are in the statute that was purchased. That's exactly right. I point the court to Justice Gorsuch's language in Epic Systems, which says that courts have a duty to interpret the law as a harmonious whole, rather than allowing different provisions to be at war with each other. Our view is if you give A3 the interpretation that the government wants, it puts that provision in at war with 3583b3. No, at war and surpluses are not the same thing. At war means conflict, right? Yes. Yes, I agree with that. But in whichever principle, I mean, I think that in our briefing we describe it as all three. I do think there are arguments that all three are the appropriate. It seems to me a lot like implied repeal because it is doing the exact same thing that repealing the language would have done. It seems to me a lot like surpluses because all of a sudden that language has no effect or meaning. And it also seems to me like it's creating a war between provisions because the two things just can't stand together. It does not make sense to say you can't do one year afterwards of supervision, but you can do five years afterwards of supervision. That is just a nonsensical scheme. I credit my friend for admitting that this is peculiar, that this is odd. Do you think of my kind of one day of imprisonment is worth a thousand days of supervised release in terms of severity? So I think that's interesting, but I think there is one part of the statutory scheme that it conflicts with. And that is if you look at the authorized terms of supervision, Congress isn't taking that view elsewhere, right? It is grading them in sort of a logical graduated structure. So Class A felonies authorize the most. Class C, it drops down. Class E, it drops down. Class A, it drops down. And then all of a sudden it jumps back up again under the government's interpretation. So it disrupts what is otherwise an orderly and logical statutory scheme. So our view is that rather than create these peculiarities, these oddities that my friend acknowledges exist under the government's reading of the statute, there is a perfectly sensible, perfectly textual reading of the statute available that avoids those problems. If that is a problem that Congress perceives going forward, it can fix it. And as the government acknowledges, there are other options available for district court judges going forward. There is intermittent confinement. It is qualitatively less severe than the punishment that Mr. Little suffered, which is why we do not think this is a harmless error. But that option is available going forward for district court judges who want to ensure that there is probation in the future, but also want to provide for some degree of imprisonment. All right, thank you. We'll take the case under advisory.
judges: Wilkins, Walker, Rogers